## HEDGES et al. v. DIXON COUNTY.

*(Circuit Court, D. Nebraska. January, 1889.)*

RAILROAD COMPANIES—MUNICIPAL AID—EXCESSIVE ISSUE—EQUITY—POWER TO SCALE.

Where a county's issue of bonds for donation to a railroad has been held void in a court of law, as in excess of the constitutional limit of indebtedness, equity has no power to scale down the issue to the limit, and enforce it against the county, the contract being indivisible, and void *in toto*, and there being no executed consideration to support an implied promise.

In Equity. Bill by Daniel T. Hedges and others to scale down and enforce an issue of the bonds of defendant county, said issue having been held void as in excess of the constitutional limit of indebtedness of the county. Defendant demurs.

*J. M. Woolworth*, for complainant.

*A. J. Poppleton*, *J. B. Barnes*, and *J. M. Thurston*, for respondent.

BREWER, J. The facts in this case are these: In 1876, Dixon county, the defendant herein, issued $87,000 of its bonds as a donation to the Covington, Columbus & Black Hills Railroad Company. The amount of such issue exceeded 10 per cent. of the assessed value of the property of the county, by reason whereof it has been finally adjudged by the supreme court that the bonds were void. *Dixon Co.* v. *Field*, 111 U. S. 81, 4 Sup. Ct. Rep. 315. This bill is brought by the complainants, who own nearly all of the bonds thus issued, praying that they may be scaled down to an amount equal to 10 per cent. of the assessed valuation of the property of the county at the time of the issue, and to that extent held as valid obligations of the county, and a decree entered against it therefor. The complainants offer to accept such reduced amount in satisfaction, and tender their bonds for cancellation on payment thereof. They also pray that the holders of the other bonds, when known, be brought before the court and impleaded in this bill, and given the same rights. To this bill the defendant demurs on the ground that it states no ground of action.

Conceding that the bonds, as they stand, are void, and that no recovery can be had thereon in a court of law, complainants insist that a court of equity has power to scale them down to an amount equal to that that the county might lawfully have issued, and enforce them when thus scaled down. It is said that the vice of this transaction is only in the matter of excess; that a court of equity may expunge the vice, and enforce the contract thus freed from taint. Counsel for complainants concedes that he has been unable to find any precedent for such a proceeding, and his confession of inability is satisfactory evidence that no such precedent exists; so that the question must be determined by reference to the general principles of law; and here it may be remarked that the difference between courts of law and those of equity is mainly one of forms and remedies, rather than in the matter of absolute rights and obligations. If a contract be pronounced absolutely void in a court of law, it must expect the same denunciation in a court of equity. Courts of equity, like those of law, must accept contracts as they are made, and have no power to make contracts for parties. If the contracts which parties attempt to make are void because in defiance of some statute or common law, they are void alike in either court, and neither court can change a void into a valid contract. Now, the contract in this case, in its inception, was on the part of the county a single and indivisible obligation; that is, an attempted donation of $87,000 to the railroad company. The bonds are merely evidences of the contract, the contract standing behind them, and, whatever separate and divisible obligations of the county exist after the issue of the bonds, the contract in the first instance was single and entire. Now that was an attempted donation of $87,000 to the railroad company. Such donation the county had no power to make, and, after it had finished its action, nothing which the promisee, the other party to the contract, could do could give validity

to the obligation of the county. It was either good or bad, dead or alive, when it left the hands of the promisor. Take this illustration: If, in a state where usury avoids the entire contract, a usurious note be given, that note is void, and no willingness of the payee, no act of his, can transform that invalid into a valid contract. Of course it would be very satisfactory if the promisee, by consenting to a reduction of the interest, could give validity to a void promise, vitality to a dead contract. So here, if the promisee, the railroad company, could reduce the extent of the promise, it doubtless would be satisfactory, but it would be thereby making a contract, or attempting to make a contract, different from that which the promisor proposed. The fact that 87 bonds were issued, instead of one, in no manner changes the primary obligation attempted to be assumed by the county.

Neither is this a case where there is an equity to compel payment by the county on the ground that it has received something, for the bonds were donated, and no implied promise can be based upon the matter of value received. Counsel cites the case of *Daviess Co.* v. *Dickinson*, 117 U. S. 657, 6 Sup. Ct. Rep. 897, in which the county having authorized the issue of bonds to the amount of $250,000, the county officers issued $320,000, and the county was held liable for the first $250,000; but the cases were not at all parallel. In that the principal had proposed a valid contract. It had done that which it had a right to do, and the wrong or misconduct of its agents, the county officers, was held not to invalidate that which the county had lawfully authorized. In this there is no breach of duty charged upon the county officers. The agents have not departed from their instructions. The trouble lies in the action of the principal itself. Its action was unauthorized, and, being without warrant of law, or rather in defiance of law, created no valid obligation.

It is unnecessary to add more. This court can make no contract for the parties. It must take the contract which they made. That contract was one that the county was not authorized to make. The bonds were void as adjudged in a court of law, void in whole and in part, and they must be so adjudged in a court of equity; and, the county having received nothing of value, no equitable obligation can be enforced against it. The demurrer will be sustained, and, the defect being one that cannot be remedied, a decree must be entered dismissing the bill.