## UNITED STATES

### v.

## TWELVE MIAMI DIGGER SLOT MACHINES.

### No. 14576.

United States Court of Appeals
Fifth Circuit.

June 25, 1954.

Henry E. Petersen, Atty. Dept. of Justice, Washington, D. C., Chester H. Curtis, Asst. U. S. Atty., Clarksdale, Miss., Noel H. Malone, U. S. Atty., Aberdeen, Miss., for appellant.

Will A. Hickman, R. L. Smallwood, Jr., Chester L. Sumners, Oxford, Miss., for appellee.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

On August 22, 1952, the United States filed a libel to forfeit twelve Miami Digger Slot Machines seized by Federal Bureau of Investigation agents from a building in Winona, Mississippi. The machines were transported from Florence, Alabama, to Winona, Mississippi, and were alleged to be gambling devices within the meaning of Section 1171,[1] Title 15 U.S.C.A., that had been transported in interstate commerce in violation of Section 1172, Title 15 U.S. C.A., and therefore were subject to seizure and forfeiture under the provisions of Section 1177, Title 15 U.S.C.A.

Ernie G. Collins filed an answer and claim in the forfeiture proceedings denying that the machines were gambling machines and that he knowingly transported said machines in interstate commerce with the intent to violate the law.

When the present libel was filed there was pending in the same court criminal cause No. 8278 in which Collins was charged with transporting the same gambling devices in violation of Section 1172, supra. The defendant waived a jury in the criminal proceeding and by agreement the two causes were consolidated for trial. At the termination of the trial, the court below found the defendant not guilty on the criminal charge and dismissed the libel, finding that the twelve machines were gambling devices as defined by the statute but that Collins had not "knowingly" transported them within the meaning of Section 1172, supra. From this judgment of dismissal the United States has appealed.

Section 1172, supra, prohibits transportation of gambling devices in interstate commerce except to any state which exempts itself or its subdivision by state law,[2] and § 1177 authorizes for-

---

1. The provisions of Title 15 U.S.C.A. § 1171, are: "As used in this chapter—
    "(a) The term 'gambling device' means—
    "(1) any so-called 'slot machine' or any other machine or mechanical device an essential part of which is a drum or reel with insignia thereon, and (A) which when operated may deliver, as the result of the application of an element of chance, any money or property, or (B) by the operation of which a person may become entitled to receive, as the result of the application of an element of chance, any money or property; or
    "(2) any machine or mechanical device designed and manufactured to oper-

ate by means of insertion of a coin, token, or similar object and designed and manufactured so that when operated it may deliver, as the result of the application of an element of chance, any money or property; * * *."

2. In pertinent part: "It shall be unlawful knowingly to transport any gambling device to any place in a State, the District of Columbia, or a possession of the United States from any place outside of such State, the District of Columbia, or possession: *Provided*, That this section shall not apply to transportation of any gambling device to a place in any State which has enacted a law providing for the exemption of such State from

feiture of devices transported in violation of the Act.[3] The court below held that the digger machines in suit were gambling devices and by the admission of claimant it affirmatively appears that the machines were transported in interstate commerce from Florence, Alabama, to Winona, Mississippi. Thus the only question for our determination is whether the court erred in holding that the gambling machines were not "knowingly" transported in interstate commerce. We think this question must be answered in the affirmative.

The uncontroverted evidence shows: that claimant was operating these machines in Florence, Alabama, on Saturday, September 22, 1951, in connection with a carnival known as the Gem City Shows; that claimant was aware of the passage of the Johnson Act (the statute under consideration) and that it prohibited the transportation of slot machines across state lines; that on the evening of September 22, 1951, claimant received a telephone call from a Mr. Parker who informed claimant that similar machines had been seized in North Carolina and that claimant should not set up his machines any more; that claimant made no effort to store the machines in Florence, Alabama, but packed up the machines and transported them to Columbus, Mississippi, on Sunday, September 23, 1951; that upon his arrival in Columbus, claimant set up his other concessions with the carnival but not the digger machines; that on September 25, 1951, and after first securing permission from Gentsch whom he had known for fifteen years he moved the machines to Winona, Mississippi, and stored them in Gentsch's barn where they were later seized by Federal Bureau of Investigation agents.

During the course of his testimony Collins stated that he thought all carnival games had been exempted from the operation of the Act but that when he received the telephone call from Parker a doubt arose in his mind. And because of this doubt he figured that as long as there was a dispute about operating the machines it would be a good idea to move them over to Gentsch's place and that he had no intention of setting them up in Mississippi or any other state until the question was settled.

The district judge construed the word "knowingly" in the statute to mean "intentionally violate the law." With this construction in mind he declared: "I think it is perfectly clear from the testimony that as soon as this man who is here accused, found out they were considered gambling machines and it was against the law to operate them or transport them in Interstate Commerce, he did not move them into the State of Mississippi or take them from Colum-

the provisions of this section, or to a place in any subdivision of a State if the State in which such subdivision is located has enacted a law providing for the exemption of such subdivision from the provisions of this section. * * *" 64 Stat. 1134, 15 U.S.C.A. § 1172.

3. "Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this Act shall be seized and forfeited to the United States. All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs law; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this Act, insofar as applicable and not inconsistent with the provisions hereof: *Provided,* That such duties as are imposed upon the collector of customs or any other person with respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of gambling devices under this Act by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General." 64 Stat. 1135, 15 U.S. C.A. § 1177.

bus, Mississippi, to Winona with any intention to violate the law or do anything in the world but to put them over there, in storage and await an authoritative decision, with no intention of doing anything in violation of any law. * * * I do not think there was any intention to operate these machines after this man found out they were considered to be violating the law if they were transported and operated." And in concluding that the defendant-claimant had not violated either the criminal or the civil law the district judge based his decision "not on the ground that these were not gambling machines and not on the ground that they were not actually transferred across a state line, but on the ground they were not transferred with intent to violate the law, but with the intention to keep within the law until the law could be clarified."

▆ In our opinion, the district court committed reversible error in dismissing the libel. Its view of the applicable law was based upon the misconceived notion that the machines though gambling devices were not subject to forfeiture because claimant did not transport the machines across state lines with any intention of operating them. Whether or not complainant intended to operate the gambling devices in Mississippi is beside the point. The statute contains not one word about the operation of the devices after they have crossed the state line. Section 1172 provides that it shall be unlawful knowingly to transport any gambling device in interstate commerce, and, if this provision of the statute is violated § 1177 provides that the device shall be seized and forfeited to the United States. The issue here presents a question of statutory construction. The word "knowingly" plainly speaks its own meaning. As used in this statute the adverb "knowingly" qualifies both its adjacent verb and the full act thereafter described.[4]

▆ The questions are: Did claimant know that he was transporting the machines in interstate commerce and did he know that the machines transported were gambling devices? The evidence is all one way and to the effect that claimant knowingly transported the twelve machines from Alabama to Mississippi and we think the evidence convincingly shows that claimant "knew" that the machines which he transported were gambling devices. Claimant had thirty-eight years of experience in the carnival business. He had used digger machines in his business for fifteen years and was familiar with their mechanism and mode of operation and knew that the machines were operated by the insertion of a coin. He knew of the passage of the Johnson Act and was under the impression that the Act had in some way been revised so as to exempt carnival games. However, he later learned that machines similar to the ones he was using had been seized by the Government in North Carolina and Parker from whom he had leased the machines told him not to operate the machines any more. Under these circumstances it is plain that claimant had full knowledge of all of the facts and circumstances that go to make up the fact that the machines were gambling devices. We think the evidence was not only sufficient but compels a finding that the gambling machines were knowingly[5] transported in interstate commerce.

The judgment must be reversed, and the machines here involved must be ordered forfeited to the United States of America.

Reversed and remanded with directions to order forfeiture in accord herewith.

---

4. United States v. Clark, C.C., 37 F. 106, 107.

5. Cf. Federal Deposit Insurance Corporation v. Mason, 3 Cir., 115 F.2d 548, 550; U. S. v. Starkey, D.C., 52 F.Supp. 1.